# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

YVONNE REINA,

     **Plaintiff,**

-vs-             **Case No.  6:10-cv-1643-Orl-GJK**

COMMISSIONER OF SOCIAL
SECURITY,

     **Defendant.**

_____

## MEMORANDUM OF DECISION

  Yvonne Reina (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed and remanded for an award of benefits because the Administrative Law Judge (the "ALJ") erred by: 1) failing to consider and make a finding regarding the side effects that Claimant's medications have on her ability to work; 2) failing to include certain impairments and limitations in the hypothetical posed to the vocational expert; 3) failing to give substantial weight to the opinions of Dr. Howard S. Buchoff and Dr. Walter J. Muller, Claimant's treating doctors; and 4) failing to articulate specific and explicit reasons for rejecting Claimant's pain testimony.  Doc. No. 14 at 9-21.  For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I. BACKGROUND

  Claimant was born on August 11, 1951.  R. 76.  On March 1, 2001, Claimant filed an application for benefits (hereafter "Application"), alleging a disability onset date of December

15, 2000.  R. 76.  Claimant alleges she is unable to work due to her migraine headaches, pituitary adenoma, chronic fatigue syndrome, anxiety, depression, lactation and Raynaud's disease.  R. 86.  Claimant's Application was denied initially and upon reconsideration.  R. 61, 63.  On November 13, 2002, the ALJ denied Claimant's Application, finding she was not disabled.  R. 14-23.  Claimant appealed on July 14, 2004, and the denial of her Application was reversed and remanded to reconsider and update the evidence from Claimant's treating sources regarding Claimant's fibromyalgia and its limiting effects; obtain a consultative examination from a rheumatologist regarding Claimant's functional abilities; and, if necessary, obtain testimony from a vocational expert.  R. 388-90, 399-400.  On December 6, 2006, the ALJ commenced a hearing pursuant to the order of remand.  R. 521-31.  The hearing was adjourned so Claimant could obtain additional records from a treating source.  R. 525-31.  On April 9, 2007, the ALJ reconvened the hearing.  R. 532-80.  The evidence presented at this hearing, the medical records and the ALJ's decision are discussed below.

## II.    MEDICAL AND OPINION EVIDENCE

### A.  Dr. Buchoff

On June 6, 2002, Claimant presented to Dr. Buchoff, a rheumatologist, for her complaints of fatigue, joint and muscle pain.  R. 318.  Other than tenderness in her left arm, neck, back, and left buttock, Claimant's physical examination was normal.  R. 318-19.  Dr. Buchoff diagnosed Claimant with "[m]yalgias and arthralgias-numerous diagnostic possibilities.  Fibromyalgia most likely."  R. 319.

On June 21, 2002, Dr. Buchoff completed a "Medical Assessment of Ability to do Work Related Activities."  R. 450-52.  Dr. Buchoff opined that Claimant's fatigue, pain and tenderness

in her muscle and joints limited Claimant to occasionally lifting two pounds, frequently lifting zero pounds, sitting for fifteen minutes at a time and two hours total in an eight-hour workday and standing or walking for ten minutes at a time and one hour total in an eight-hour workday. R. 450-51.  Dr. Buchoff opined that Claimant could never climb, balance, stoop, crouch, kneel or crawl as a result of her fatigue, pain and tenderness in her muscles and joints.  R. 451.  Dr. Buchoff opined that Claimant's fatigue, dizziness, anxiety and pain in her muscles and joints affected Claimant's ability to reach, handle, feel, push/pull, see, hear and speak.  R. 451.  Finally, Dr. Buchoff opined that Claimant's fatigue, dyspnea, anxiety, pain in her muscles and joints precluded her from being exposed to moving machinery, heights, extreme temperatures, chemicals, dust, noise, fumes, humidity and vibration.  R. 451-52.

On June 27, 2002, Dr. Buchoff reviewed a DEXA scan of Claimant's hip and lumbar spine, concluding that Claimant suffers from severe osteopenia.  R. 337.  Dr. Buchoff informed Claimant that she should start taking 1500 mg of calcium with 400 units of vitamin D and to begin "weight bearing exercises which would be walking or using a treadmill."  R. 339.  Dr. Buchoff noted that Claimant's pain in her muscles and joint was "unchanged-moderately severe and generalized."  R. 338.  Dr. Buchoff also noted that Claimant's fibromyalgia was "moderately symptomatic."  R. 338.

On August 20, 2002, Dr. Buchoff wrote a letter indicating that Claimant could not serve jury duty "due to pain and fatigue from fibromyalgia."  R. 336.  On this same date, Dr. Buchoff notes that Claimant's pain in her muscles and joints "has been moderately severe and generalized" and that her fibromyalgia is "moderately symptomatic."  R. 512.  On September 17, 2002, Dr. Buchoff notes that Claimant's pain in her muscles and joints is "somewhat improved"

and her fibromyalgia is "fairly well controlled." R. 512.

In 2003, Claimant saw Dr. Buchoff four times. R. 506, 509. In his first treatment note, Dr. Buchoff indicates that Claimant's pain in her muscles and joints "has been fairly severe and generalized." R. 509. Dr. Buchoff notes that Claimant's fibromyalgia is "moderately symptomatic." R. 509. In his other three treatment notes, Dr. Buchoff notes that Claimant's pain in her muscles and joints is "fairly well controlled" and that her fibromyalgia is "fairly well controlled." R. 506, 509.

In 2004, Claimant saw Dr. Buchoff five times. R. 505-06. In his January, April, June and September treatment notes, Dr. Buchoff notes that Claimant's pain in her muscles and joints is "fairly well controlled" and that her fibromyalgia is "fairly well controlled." R. 505-06. In his December treatment note, Dr. Buchoff notes that Claimant's pain in her muscles and joints "has been moderately severe, worst in low back. Also with triggering of fingers" and that Claimant's fibromyalgia is "moderately symptomatic." R. 505.

In 2005, Claimant saw Dr. Buchoff three times. R. 499. In each of his treatment notes, Dr. Buchoff notes that Claimant's pain in her joints is "fairly well controlled-mild, generalized discomfort. No joint swelling or other musculoskeletal symptoms" and that Claimant's fibromyalgia is "fairly well controlled." R. 499.

In 2006, Claimant saw Dr. Buchoff five times. R. 482, 488, 497. In all of his treatment notes, Dr. Buchoff notes that there is "[n]o joint swelling or other musculoskeletal symptoms" and that Claimant's fibromyalgia is either "under fair control" or "fairly well controlled." R. 482, 497. Additionally, Dr. Buchoff's January treatment note indicates that Claimant's pain in her joints is "moderate and generalized." R. 497. In his February treatment note, Dr. Buchoff

notes that Claimant's pain in her joints is "fairly well controlled-mild, generalized discomfort." R. 497. In his May treatment note, Dr. Buchoff notes that Claimant's pain in her joints "has been moderate in hands with stiffness. Mild generalized discomfort." R. 497.[1] In his August treatment notes, Dr. Buchoff notes that Claimant's pain in her muscles and joints is "fairly well controlled-mild, generalized discomfort." R. 482. In his November treatment note, Dr. Buchoff notes that Claimant's pain in her muscles and joints is "moderate in low back. Mild, generalized discomfort." R. 482.

On November 15, 2006, Dr. Buchoff once again completed a "Medical Assessment of Ability to do Work Related Activities." R. 447-49. Dr. Buchoff's opinion regarding Claimant's limitations and the supporting reasons are identical to his June 21, 2002 opinion. *See* R. 450-52.

## B. Dr. Muller

Claimant began treating with Dr. Muller, a psychiatrist, in 2003. In her first visit on February 4, 2003, Dr. Muller indicates that Claimant "shared with me that she wants to get disability" because she cannot work and is afraid of people. R. 472. Dr. Muller increased Claimant's dosage of Trazodone and Lexaparo and continued Claimant on Maxide, Fiorinal, K-dur, Parlodel, Provera/Estrodiol, Tenormin, Phenergan, Albuterol and Klonopin. R. 472. On March 28, 2003, Dr. Muller indicates that Claimant "[s]till hopes that she's going to get disability. I think it's problematic frankly. She keeps reiterating that she can't work." R. 471. Dr. Muller continued Claimant on the same medications, but added Buspar, Topomax and prescribing Dostinex instead of Parlodel. R. 471. On April 3, 2003, Dr. Muller documented his conversation with Claimant's former employer. R. 470. Dr. Muller indicates he "expressed [his]

---

[1] In May 2006, Dr. Buchoff ordered another DEXA scan of Claimant's hip and lumbar spine and once again concludes that Claimant has severe osteopenia. R. 488. Dr. Buchoff once again advises Claimant to take 1500 mg of calcium with 400 units of vitamin D and perform weightbearing exercises. R. 488.

concern about [Claimant], stating that I frankly saw no basis for permanent disability." R. 470. Dr. Muller further notes that Claimant's former employer indicated that Claimant was a good employee. R. 470.

On May 1, 2003, Dr. Muller completed a "Medical Assessment of Ability to do Work Related Activities." R. 349-51. Dr. Muller opined that Claimant had a "fair" ability to follow work rules, deal with the public and use judgment with the public. R. 349. Dr. Muller opined that Claimant had a "poor/none" ability to relate to co-workers, interact with supervisors, deal with work stresses, function independently and maintain attention/concentration. R. 349. To support these limitations Dr. Muller stated: "[patient] is chronically anxious [and] depressed. She blames it on her last job. She does not want to work again." R. 350. Dr. Muller opined that Claimant's "depression, withdrawal" rendered Claimant with only a "fair" ability to "understand, remember and carry out" complex job instructions, simple job instructions and detailed, but not complex, job instructions. R. 350.

Dr. Muller opined that because Claimant "has withdrawn [and] is isolating," Claimant only had a "fair" ability to maintain personal appearance and related predictably in social situations. R. 350-51. Dr. Muller opined that Claimant had a "poor/none" ability to behave in an emotionally stable manner and demonstrate reliability. R. 350. Dr. Muller further opined that Claimant "cannot meet the public. She is now unable to do xrays as before." R. 351. Dr. Muller opined that Claimant could manage benefits in her own interest and that Claimant's functional impairments, as set forth in the assessment, have existed for two years. R. 351.

On May 6, 2003, Dr. Muller notes that Claimant "refuses to work. States she can't. She's totally burned out. I told her that I contacted Dr. Jim Louttit. I also told her that I had

filled out the forms for her attorney." R. 469. On July 16, 2003, Dr. Muller indicates that Claimant's attorney withdrew from representing her, indicating that he would not handle the appeal of her denial of benefits. R. 468. Dr. Muller notes that "[w]e talked today about the possibility of her just going back to work and maybe doing something that she could enjoy a little more. She states that the only problem is that she only knows healthcare work. She can be an office assistant. She can work in x-ray, but that's about it. All of her symptoms are extremely vague." R. 468. On November 12, 2003, Dr. Muller notes that Claimant is "doing quite well" and that they discussed her family. R. 466. Dr. Muller further notes that Claimant is "still doing nothing in the way of paid work and has no intention of doing so. Still waiting to hear from her attorney about disability." R. 466. On December 31, 2003, Dr. Muller notes that Claimant had a hysterectomy and was complaining of bloating, some pain, chronic fatigue and a lack of energy. R. 465. Dr. Muller also notes that Claimant's new attorney received no records from her prior attorney because they were lost and "they will have to start over from scratch, but this could put patient in a good light." R. 465.

On February 13, 2004, Dr. Muller notes that Claimant "looks terrific" and is "doing amazingly well since her hysterectomy about two months ago. 'The only thing I can't do is to lift.'" R. 464. Dr. Muller notes that Claimant's new attorney located all of her records and that "things are underway again." R. 464. On May 14, 2004, Dr. Muller's progress note indicates that Claimant is not working, she is wondering what will happen to her lawsuit and she was told it would take eighteen months before she hears anything. R. 463. Dr. Muller also notes that Claimant has "[m]anaged to keep herself busy. Thinking about trying to find a little business she could do herself, perhaps at home. Has plenty of hobbies, including gardening, plants and, of

course, her family." R. 463. In his July 21, 2004, progress note, Dr. Muller indicates that Claimant "looks good," but is upset that she has Bell's Palsy. R. 462. Dr. Muller also notes that Claimant is afraid to drive and she is reluctant to travel to Atlanta to attend the finals of a Lynx derby. R. 462.

In his September and November 2004, progress notes, Dr. Muller indicates that Claimant's Bell's Palsy is improved, she is always neatly groomed, she is not working and that everything revolves around her family. R. 459, 461. In his 2005 treatment notes, Dr. Muller indicates that Claimant's husband is receiving chemotherapy and Claimant broke her ankle trying to chase her dog. R. 457-58.

On March 15, 2006, Dr. Muller notes that Claimant's spouse has completed chemotherapy. R. 456. On April 10, 2006, Dr. Muller notes that Claimant "looks good. Feeling well. Everyone in her family doing well." R. 455. Dr. Muller also notes that Claimant "has seen Dr. Persley. Things are going well medically." R. 455. On September 14, 2006, Dr. Muller notes that Claimant "looks great" and she is "just working around the house. Buying plants and flowers for the house." R. 453.

## C. State Agency Physicians

On May 8, 2001, Dr. Steven L. Wise, a non-examining consultant, completed a Psychiatric Review Technique, diagnosing Claimant with depression and anxiety disorder. R. 246, 249, 251. Dr. Wise opined that Claimant had mild restrictions in activities of daily living, moderate difficulties maintaining social functioning, concentration, persistence or pace and no repeated episodes of decompensation of extended duration. R. 256. Dr. Wise also completed a Mental Residual Functional Capacity Assessment. R. 260. With the exceptions of moderate

limitations in carrying out detailed instructions, interacting appropriately with the general public and maintaining attention and concentration for extended periods, Dr. Wise found that Claimant's understanding and memory, ability to sustain concentration and persistence, ability to socially interact and adapt were not significantly limited.  R. 260-61.  Dr. Wise indicated that Claimant has deficits due to her depression and anxiety, and she is prescribed medication, but is not receiving any counseling.  R. 262.  Dr. Wise indicates that Claimant "appears capable of following simple instructions and interacting adequately with others for goal directed behavior." R. 262.

On August 13, 2001, Dr. Val Bee, a non-examining consultant, completed a Psychiatric Review Technique.  R. 264-77.  Dr. Bee diagnosed Claimant with panic disorder by history and depressive syndrome, characterized by sleep disturbance, decreased energy, appetite disturbance with weight change and difficulty concentrating or thinking.  R. 267, 269.  Dr. Bee found that Claimant has mild restrictions performing activities of daily living and maintaining social functioning.  R. 274.  Dr. Bee also found that Claimant has moderate difficulties maintaining concentration, persistence or pace and no repeated episodes of decompensation of extended duration.  R. 274.

In Dr. Bee's Mental Residual Function Capacity Assessment, Dr. Bee opined that Claimant was moderately limited in the following abilities:  maintaining concentration and attention for extended periods; completing a normal workday and workweek without interruptions and performing at a consistent pace without rest periods that were unreasonable in number or length; and setting realistic goals or making plans independently of others.  R. 278-79. Otherwise, Dr. Bee found Claimant was either not significantly limited or there was no evidence

of limitation.   R. 278-79.   Dr. Bee noted that Claimant's "[d]aily adaptive skills appear preserved, and claimant remains capable of appropriate interaction despite some withdrawal. Claimant's depression and anxiety symptoms may cause diminished concentration and efficiency, but she appears able to meet the mental demands of well structured task activity. May also need assistance with goal setting."  R. 280-81.

On August 26, 2001, Dr. Eric Puestow, a nonexamining consultant, completed a Physical Residual Functional Capacity Assessment.   R. 282-89.   Dr. Puestow opined that Claimant could lift fifty pounds occasionally, twenty-five pounds frequently, could sit, stand or walk six hours in an eight hour workday and her ability to push and/or pull was unlimited.   R. 283.   Dr. Puestow opined that Claimant could never climb ladders, ropes or scaffolds, but could frequently climb ramps or stairs, balance, stoop, kneel, crouch or crawl.   R. 284.   Dr. Puestow opined that Claimant had no manipulative, visual or communicative limitations.   R. 285-86.   Dr. Puestow opined that Claimant should avoid concentrated exposure to wetness, humidity, hazards, extreme cold or heat and fumes, odors, dusts, gases and poor ventilations.   R. 286.   Dr. Puestow opined that Claimant's ability to be exposed to noise and vibration was unlimited.   R. 286.

## III.    ADMINISTRATIVE PROCEEDINGS

On April 9, 2007, a hearing was held before the ALJ.   R. 532-80.   Claimant and a vocational expert testified at the hearing.   R. 532.   Claimant testified that she has a basic x-ray license and has worked as medical assistant and x-ray technician.   R. 539-41.   Claimant testified that she has not worked since December 2000 because of "back pains and a lot of emotional problems, and just problems specifically."   R. 541.   Claimant testified that one reason she stopped working was because she "couldn't work any more with people" and "got tired to

listening about complaints." R. 542, 545.

Claimant testified that she has treated with Dr. Buchoff since 2002 and Dr. Muller since 2003. R. 544, 546. Claimant testified that she can sit for two or three minutes at a time, can stand for three minutes before she gets light-headed, can walk for five minutes, has vision and memory problems. R. 544, 547-49, 554. Claimant testified that she has panic attacks when she goes outside and treats them with medication. R. 553. Claimant testified that she does not lift anything, use a computer, socialize, or shop and cannot manage her own funds or complete housework. R. 550-53, 555. Claimant testified that she takes between ten and fifteen medications. R. 547. Claimant testified that the side effects of her medications are dizziness, drowsiness, lethargy, feeling out of body and that, as a result, she has stopped driving. R. 546-47. Claimant also testified that she has suffered from migraine headaches since her teens and that she could work if that was her only problem. R. 559.

The vocational expert testified that Claimant's work as an x-ray technician was light duty and her work as a medical assistant was borderline light to medium duty. R. 563-64. The ALJ asked two hypotheticals of the vocational expert. The first hypothetical assumed a person with the following characteristics and limitations:

1. forty-nine (49) to fifty-four (54) years old;

2. high school education;

3. prior work as an x-ray technician and medical assistant;

4. limited to light work;

5. no working at heights, climbing ladders or scaffolds;

6. no concentrated exposure to extremes in temperature and humidity; and

    7.   no concentrated exposure to fumes, odors, dust and gases.

R. 564-65.  The vocational expert testified that a person with the following characteristics and limitations could perform her prior work.  R. 565.

The vocational expert testified the hypothetical person could still perform her past work if she was unable to sit or stand for longer than an hour, thereby requiring switching between sitting and standing.  R. 565-66.  If the hypothetical person needed to change positions more often, the vocational expert testified she could still work as a medical assistant, but working as an x-ray technician "would be more problematic."  R. 566.  The vocational expert testified that the hypothetical person could not perform her past work if she was unable to perform detailed, multitask functions or was limited to occasional interaction with the public.  R. 567.

In the second hypothetical, the ALJ asked the vocational expert to assume a person with the same characteristics and limitations as in the first hypothetical, but also limited to "simple, routine work that does not require more than occasional interaction with the public."  R. 568. The vocational expert testified that this hypothetical person could work as an office helper, SVP of two, unskilled light work; mail clerk, SVP of two, unskilled light work; and domestic laundry worker, SVP of two, unskilled light work.  R. 568-69.  The vocational expert testified that the hypothetical individual's ability to perform these jobs would not be impacted by the need to alternate between sitting and standing every half hour.  R. 569.  The vocational expert also testified that the hypothetical person's past work provided transferable skills to sedentary work and that the ALJ's limitation to simple, routine work equates to unskilled work.  R. 570-71.

On July 20, 2007, the ALJ issued her decision.  R. 370-83.  At step two, the ALJ found that Claimant suffered from the severe impairments of "osteopenia of the hip and lumbar spine,

fibromyalgia, sinusitis, affective disorder, and anxiety disorder." R. 375. The ALJ found that Claimant's history of migraine headaches was non-severe. R. 375. The ALJ also found that Claimant has "mild restrictions in activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence and pace." R. 378-79.

At step four, the ALJ found that Claimant has the RFC to "perform light work. She can sit or stand for one hour maximum at a time. She must avoid concentrated exposure to extremes in temperature, humidity, fumes, odors, dust, and gases. She must also avoid heights, ladders, and scaffolds. She requires simple, routine work with occasional interaction with the public." R. 379. In making the RFC determination, the ALJ gave "very little weight" to Dr. Buchoff's and no weight to Dr. Muller's RFC assessment. R. 379-80. In regards to these doctors' RFC assessments, the ALJ stated:

> The undersigned considered Dr. Buchoff's records and, specifically, his opinion rendered in June of 2002, after only one visit from the claimant. In June 2002, Dr. Buchoff completed a form assessing the claimant's physical ability to do work-related activity. Dr. Buchoff indicated that the claimant was severely limited in her ability to walk, sit, stand and perform postural activities.
>
> . . . .
>
> Again, Dr. Buchoff saw the claimant on only one occasion before completing the assessment and except for tenderness of the left upper arm, neck, upper back, left low back and left buttock, the examination was unremarkable. Additionally, records covering 2002 through 2006 from Dr. Buchoff . . . indicate that the claimant's fibromyalgia was fairly well controlled and did not suggest any disabling condition. Furthermore Dr. Buchoff suggested the claimant exercise and weight train in order to address her osteopenia. Accordingly, **Dr. Buchoff's opinion regarding the claimant's abilities in June of 2002 are not at all**

**supported by his own treatment notes are given very little weight**.  His assessment is further brought into question by his completion of the same form 4 years later with identical limitations.

The undersigned also considered Dr. Muller's records and his assessment regarding the claimant's ability to do work related activities.  Similar to Dr. Buchoff's opinions, the undersigned finds Dr. Muller's residual functional capacity opinion unsupported by his treatment notes.  In fact, Dr. Muller was very candid in his treatment notes.  In April of 2003, Dr. Muller stated that he saw no basis for disability.  In July of 2003, Dr. Muller stated that the claimant's problems were extremely vague and suggested she go back to work.  In February of 2004, he described the claimant as doing amazingly well and looking terrific.  The claimant described hobbies and a trip to Vegas.  Surprisingly, however, Dr. Muller submitted a statement in May of 2003 opining that the claimant had a poor/none ability to relate to co-workers, interact with supervisors, deal with work stresses, function independently, or maintain attention/concentration.   He indicated that she was chronically anxious and depressed and stated that she had only a fair ability to maintain personal appearance and relate predictably in a social situation.  He stated that she had a poor/none ability to behave in an emotionally stable manner or demonstrate reliability.  **Dr. Muller's assessment is so blatantly unsupported by the medical evidence that it is accorded no weight**.  There is, quite simply, nothing in his treatment records to support his opinions.  Rather, his treatment records wholly contradict his opinions and suggest that the claimant is quite capable of maintaining employment.

R. 379-80 (internal citations omitted) (emphasis added).  Thus, the ALJ gave very little weight to

Dr. Buchoff's RFC opinion and no weight to Dr. Muller's RFC opinion after finding they were

unsupported by the medical record.

The ALJ also considered the RFC opinions from the State agency physicians.  R. 380.

The ALJ considered these opinions "to be expert medical opinions of non-examining sources,"

citing Social Security Ruling 96-6p.  R. 380.  The ALJ found that Claimant's "physical capacity

is more restricted than that determined by the State agency.  The undersigned adopted the State

agency's findings regarding environmental and postural limitations, however."  R. 380 (internal citation omitted).

In regards to Claimant's testimony, the ALJ recognized that a "claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone . . . ."  R. 381.  In determining Claimant's credibility regarding her stated symptoms, the ALJ considered seven factors, as set forth in 20 C.F.R. § 404.1529(c):

1. Claimant's daily activities;

2. The location, duration, frequency and intensity of Claimant's pain or other symptoms;

3. Factors that precipitate and aggravate Claimant's symptoms;

4. The type, dosage, effectiveness and side effects of any medications Claimant is taking or has taken;

5. Treatment, other than medication, that Claimant receives or has received;

6. Any measures other than treatment Claimant uses or has used; and

7. Any other factors concerning Claimant's functional limitations and restrictions due to pain or other symptoms.

R. 381.  In considering these factors the ALJ stated the following:

> Since her alleged disability onset date, the claimant has not required any emergency medical treatment or hospitalization.  The evidence does not demonstrate manifestations of severe pain such as muscle wasting or atrophy, poor overall health, or weight loss.  To the contrary, the claimant has been described as well nourished, well developed and in no distress and examinations have shown no evidence of muscle wasting or atrophy.  The claimant has reported some weight loss but the evidence shows that her weight has stayed between 140 and 146 since at least November 2000.
>
> . . . .

> The claimant testified that she cannot work because of back pain, emotional problems, and difficulty working with people. She testified that she has panic attacks when she goes outside and that her necessary medications make her dizzy. She testified that she can only stand approximately three minutes before she will get lightheaded and indicated that she can walk only five minutes. She testified that she can sit for 2-3 minutes without discomfort and cannot lift anything because she is too exhausted.
>
> The claimant testified to little in the way of activities. However, she previously reported that she also pays the bills, does some shopping, and drives for short distances. While the claimant may experience some pain and other symptoms, her allegations regarding the degree of her limitations are exaggerated and not entirely credible. The claimant testified to severe sitting, standing, and walking restrictions that are simply unsupported by the medical evidence of record.

R. 381-82. Thus, the ALJ found that Claimant's testimony regarding her limitations was not supported by the medical record.

The ALJ found that Claimant could not perform her past relevant work as medical assistant and radiology technologist. R. 382. Relying on the vocational expert's testimony, the ALJ found that Claimant could work as an office helper, mail clerk and laundry worker. R. 382-83. Accordingly, the ALJ found Claimant not disabled. R. 383. On September 20, 2010, the Appeals Council denied Claimant's request for review. R. 364-67. Claimant timely appealed to the District Court. Doc. No. 1.

## IV.   THE ISSUES

As noted above, Claimant raises four issues on appeal. First, Claimant argues that the ALJ did not "make a finding regarding the affect [sic] of [Claimant's] medications on her ability to work as required by *Cowart v. Schweiker*[, 662 F.2d 731 (11th Cir. 1981)]. The ALJ did not consider how [Claimant's] side effects relate to her musculoskeletal and mental impairments."

Doc. No. 14 at 11 (internal citation omitted). Claimant specifically points to statements in the medical record that she had adverse reactions to Imitrex, did not respond well to Fioricet and cannot function while taking Cozaar. Doc. No. 14 at 10. Claimant also asserts that the Appeals Council "did not even mention side effects. Thus, neither the ALJ nor the Appeals Council applied the correct legal standards to Ms. Reina's medications." Doc. No. 14 at 11.

Second, Claimant argues that the ALJ erred in relying on the vocational expert's testimony in finding that she could perform other jobs. Doc. No. 14 at 12. Claimant asserts that the ALJ's hypotheticals failed to include the side effects of Claimant's medications; failed to include that Claimant suffers from loss of consciousness, partial epilepsy with impairment of consciousness and syncope; failed to include that Claimant suffers from agoraphobia and panic attacks; and failed to include that Claimant's limitations in concentration, persistence and pace. Doc. No. 14 at 13.

Third, Claimant argues that the ALJ did not articulate good cause for giving little weight to Dr. Buchoff's opinions and no weight to Dr. Muller's RFC opinions. Doc. No. 14 at 15-19. Claimant asserts that the ALJ "rejected Dr. Buchoff's opinion because at the time of his first opinion Dr. Buchoff had examined [Claimant] once. Yet after nineteen examinations over four years, Dr. Buchoff still had the same opinion." Doc. No. 14 at 16 (internal citation omitted). Claimant also asserts that the ALJ "rejected Dr. Buchoff's opinion because it is consistent with his previous opinion." Doc. No. 14 at 16-17 (internal citation omitted). Claimant asserts these are not adequate reasons to reject Dr. Buchoff's opinions. Doc. No. 14 at 17. In regards to Dr. Muller, Claimant asserts that the ALJ's finding that Dr. Muller's RFC opinion is unsupported by his treatment records is not supported by substantial evidence. Doc. No. 14 at 17-18.

Fourth, Claimant argues that the ALJ did not articulate explicit or adequate reasons for rejecting her testimony concerning her limitations on walking, sitting and standing, as well as her panic attacks.  Doc. No. 14 at 19-21.  Based on these errors and the fact she filed her Application over a decade ago, Claimant asserts she has suffered an injustice and requests the Court reverse the ALJ's decision with directions to remand for an award of benefits.  Doc. No. 14 at 21-23.

The Commissioner argues that *Cowart* is distinguishable because, in that case, the claimant appeared pro se and thus, the Court imposed upon the ALJ a heightened duty to develop the record.  Doc. No. 18 at 5.  The Commissioner also argues that Claimant's complaints regarding the side effects of her medication are not supported by the medical record.  Doc. No. 18 at 5-7.  The Commissioner contends the ALJ did not err in failing to include loss of consciousness, partial epilepsy, syncope, panic attacks and agoraphobia because they were merely symptoms of Claimant's migraine headaches and anxiety.  Doc. No. 18 at 8.  The Commissioner further asserts that the medical evidence does not support Claimant's claims that these conditions caused additional limitations other than those found by the ALJ.  Doc. No. 18 at 8-9.  The Commissioner also argues that the ALJ's hypothetical adequately accounted for Claimant's limitations in concentration, persistence and pace because the medical record supports a finding that Claimant can perform simple, routine tasks despite these limitations. Doc. No. 18 at 9-11.

The Commissioner argues that the ALJ properly discounted Dr. Buchoff's first RFC opinion because it was rendered after seeing Claimant once and, therefore, was not "entitled to any significant weight."  Doc. No. 18 at 12.  As to Dr. Buchoff's second RFC opinion, the Commissioner argues that because it is identical to the first opinion, "Dr. Buchoff could not have

duplicated this second report <u>four years later</u> without at least referring (and at worst copying) the first report." Doc. No. 18 at 13 (emphasis in original). The Commissioner also notes that the ALJ did not "specifically discuss" Dr. Buchoff's second RFC opinion, but argues this is harmless error because the "ALJ discussed and properly refuted Dr. Buchoff's June 2002 assessment and substantial evidence supports her reasons for doing so." Doc. No. 18 at 14 n. 6. The Commissioner argues that the ALJ properly gave no weight to Dr. Muller's RFC opinion because it was unsupported by his treatment notes. Doc. No. 18 at 14-15.

The Commissioner argues that the ALJ articulated the reasons for discounting Claimant's testimony concerning her limitations. Doc. No. 18 at 16. Finally, the Commissioner argues that if the Court reverses the ALJ's decision, the Court should remand the matter for further consideration. Doc. No. 18 at 18-19.

## V.    LEGAL STANDARDS

### A.    THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he

> must prove at step four that his impairment prevents him from
> performing his past relevant work. At the fifth step, the regulations
> direct the Commissioner to consider the claimant's residual
> functional capacity, age, education, and past work experience to
> determine whether the claimant can perform other work besides his
> past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not

disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v.*

*Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District

Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The

District Court must view the evidence as a whole, taking into account evidence favorable as well

as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835,

837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider

evidence detracting from evidence on which Commissioner relied). The District Court "may not

decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## VI.   ANALYSIS

### A.  Medication Side Effects

When an unrepresented claimant's testimony raises a question about the side effects of medication, the "ALJ has a special duty to elicit additional testimony or otherwise make a finding about such side effects." *Colon ex. rel. Colon v. Comm'r*, 411 F. App'x. 236, 238 (11th Cir. 2011). However, when a "represented claimant makes a similar statement, but does not otherwise allege that the side effects contribute to the alleged disability, we have determined that the ALJ does not err in failing to 'inquire further into possible side effects.'" *Id.* (quoting *Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985)). If there is no evidence presented to the ALJ "that a claimant is taking medication that cause side effects, the ALJ is not required to elicit testimony or make findings regarding the medications and their side effects." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x. 901, 904 (11th Cir. 2011).

Claimant argues the ALJ did not consider the side effects of her medications. This argument is unpersuasive for three reasons. First, the ALJ found Claimant's testimony regarding the limitations of her medication side effects not credible. R. 381-82. Second, Claimant was represented by counsel and did not testify that the side effects of her medications prevented her from working. *See* R. 86. The ALJ was not required to inquire any further about side effects. *See Colon ex. rel. Colon*, 411 F. App'x. at 238. Third, the medical record does not indicate that Claimant complained about the side effects of her medications to her treating doctors. *See id.* (affirming ALJ's finding that claimant's subjective complaints were not credible where claimant

did not complaint about side effects to doctors and doctors did not note any side effects). Claimant's argument that the Appeals Council failed to consider the side effects of her medication fails for the same reasons.   Accordingly, Claimant's argument is not a basis for reversal.

### B.  The ALJ's Hypotheticals

At step five, the Commissioner bears the burden of establishing jobs the claimant can perform that exist in the national economy.  *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x. 135, 137 (11th Cir. 2009).  This can be accomplished by the ALJ posing a hypothetical to a vocational expert.  *Id.*  The hypothetical must comprise all of a claimant's impairments.  *Id.*  However, the "ALJ is not required to include findings in the hypothetical that the ALJ properly rejects."  *Id.* Impairments that are alleged by the claimant but are not supported by substantial evidence do not need to be included in the hypothetical and the "hypothetical need not include 'each and every symptom' alleged by a claimant."  *Id.* (quoting *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1260 (11th Cir. 2007)).

When "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). "Furthermore, an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite

concentration deficiencies." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x. 869, 872 (11th Cir. 2011).

In *Jarrett*, 422 F. App'x. at 872, the ALJ's hypothetical to the vocational expert restricted the individual to work involving simple instructions and tasks. The Eleventh Circuit concluded that the ALJ's hypothetical sufficiently accounted, both explicitly and implicitly, for the claimant's limitations in concentration, persistence and pace because two non-examining consultants opined the claimant could perform simple tasks despite the claimant's moderate limitation in maintaining concentration, persistence and pace. *Id.*

The ALJ did not err in failing to include loss of consciousness, partial epilepsy, syncope, agoraphobia and panic attacks in the hypotheticals posed to the vocational expert because the ALJ did not find them to be impairments. *See Wright*, 327 F. App'x. at 137 (ALJ not required to include limitations he properly rejects). Further, a hypothetical is not required to include every symptom alleged by Claimant. *Id.*

The ALJ's limitation in the hypothetical to simple, routine work adequately accounted for Claimant's moderation limitations in attention, concentration and pace. Both Drs. Wise and Bee found that Claimant had moderate limitations in her ability to maintain concentration, persistence or pace. R. 256, 274. Notwithstanding this limitation, Dr. Wise opined that Claimant could follow "simple instructions" and interact adequately with others to perform goal directed behavior. R. 262. Dr. Bee opined that Claimant could "meet the mental demands of well structured task activity." R. 280. Drs. Wise and Bee also opined that Claimant was not significantly limited in her ability to understand, remember or carry out simple instructions and that could sustain an ordinary routine without special supervision. R. 260, 278.

-23-

The ALJ's hypothetical adequately accounted for Claimant's limitations in concentration, persistence or pace because the medical record indicates that Claimant can perform simple, routine tasks notwithstanding her limitations in these areas.  *See Jarrett*, 422 F. App'x. at 872; *also see Convery v. Comm'r of Soc. Sec.*, No. 3:10-cv-1185-J-MCR, 2012 WL 39540 at *8 (M.D. Fla. Jan. 9, 2012) (finding ALJ's hypothetical accounted for claimant's moderate difficulties in concentration, persistence or pace where medical record indicated that claimant could perform the mental demands required of concentrated task-oriented activity, could carry out simple instructions and could work at a job that required performing routine, repetitive tasks).  Accordingly, the ALJ did not err in relying on the vocational expert's testimony in finding that there were jobs Claimant could perform in the national economy.

### C.  Weighing Dr. Buchoff and Dr. Muller's RFC Opinions

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 F. App'x. 266, 269 (11th Cir. 2005).[2]   "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Id*.  Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone.  *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090,

---

[2] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

1094 (11th Cir. 1985).

The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Moreover, conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Soc. Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. April 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

The ALJ gave two reasons for giving little weight to Dr. Buchoff's June 2002 RFC opinion: it was rendered after he saw Claimant one time and was inconsistent with his treatment notes. R. 379. The opinion of a doctor who examines claimant once is not entitled great weight. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). Thus, the ALJ's first reason for giving Dr. Buchoff's June 2002 opinion was proper.

Dr. Buchoff's treatment records, by and large, indicate that Claimant suffers from mild, generalized discomfort and has no joint swelling or other musculoskeletal symptoms. R. 482, 497, 499. Dr. Buchoff's treatment records indicate that the pain in Claimant's muscles and joints, as well as her fibromyalgia, is "fairly well controlled." R. 482, 497, 499, 505-06, 509, 512. Notwithstanding these findings, Dr. Buchoff opined that Claimant's joint and muscle pain

-25-

and tenderness limited Claimant to lifting two pounds occasionally; limited Claimant to walking

ten minutes at time and no more than an hour in an eight hour workday; and limited Claimant to

sitting fifteen minutes at a time and no more than two hours in an eight hour workday; prevented

Claimant from climbing, balancing, stooping, crouching, kneeling and crawling; and limited

Claimant's ability to reach, handle, feel, push/pull, see, hear and speak.  R. 447-48.   Dr.

Buchoff's RFC assessment is contrary to the findings in his treatment notes and the ALJ had

good cause to give his opinion "very little weight."  *See Johnson*, 138 F. App'x. at 269.

In regard to Dr. Buchoff's November 2006 RFC assessment, the ALJ correctly noted that

it was identical to Dr. Buchoff's June 2002 RFC assessment and offered this as an additional

reason to "question" the June 2002 RFC assessment.  R. 377, 379.   Thus, the ALJ clearly

considered Dr. Buchoff's November 2006 RFC assessment and recognized it was identical to his

June 2002 RFC assessment.  Dr. Buchoff's June 2002 and November 2006 RFC assessments are

the same and, therefore, Dr. Buchoff has only one opinion, which was offered twice.  The ALJ

reviewed Dr. Buchoff's medical records from 2002 through 2006 and noted that Dr. Buchoff

consistently documented that Claimant's fibromyalgia was fairly well controlled and never

suggested Claimant had a disabling condition.  R. 379.  Dr. Buchoff's records also indicate that

Claimant only experiences mild, generalized discomfort and the pain in her joints and muscles is

fairly well controlled.  R. 482, 497, 499, 505-06, 509.  The ALJ's finding that Dr. Buchoff's

RFC assessment is inconsistent with his medical records is clearly supported by substantial

evidence and constitutes good cause to accord his RFC opinion "very little weight."  *See*

*Johnson*, 138 F. App'x. at 269.

Dr. Muller's RFC assessment indicates that Claimant has poor to no ability to relate to

co-workers, interact with supervisors, deal with work stresses, function independently, maintain attention/concentration, behave in an emotionally stable manner and demonstrate reliability.  R. 349-50.  However, Dr. Muller's notes immediately preceding and following his RFC assessment indicate that Dr. Muller found Claimant's desire to obtain disability "problematic," lacked any basis and her symptoms were "extremely vague."  R. 468, 70-71.  In subsequent treatment notes, Dr. Muller noted Claimant was doing "amazingly well" after her hysterectomy and Claimant stated that "'[t]he only thing I can't do is to lift.'"  R. 464.  Dr. Muller documented that Claimant was thinking about starting a small business and "[h]as plenty of hobbies, including gardening, plants and, of course, her family."  R. 463.  Dr. Muller also indicated that Claimant "broke her ankle trying to chase her dog on Halloween."  R. 457.  Dr. Muller's treatment records are not only inconsistent, but completely contradict his RFC assessment.  The ALJ articulated good cause to give Dr. Muller's RFC opinion no weight and this decision is supported by substantial evidence.  *See Johnson*, 138 F. App'x. at 269.

### D.  Claimant's Testimony Regarding Her Pain

"If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so."  *Foote*, 67 F.3d at 1561-62.  A reviewing court will not disturb a clearly articulated credibility finding that is supported substantial evidence in the record.  *Id.* at 1562. The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *Id.*  The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case.  *Id.*  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly

discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Id.* (*quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court)).

"While an adequate credibility finding need not cite particular phrases or formulations . . . broad findings that [a claimant] lacked credibility and could return to her past work alone are not enough to enable us to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).   In determining credibility the ALJ "'must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.'" *Joyce v. Comm'r of Soc. Sec.*, No. 3:10-cv-842-J-MCR, 2011 WL 4048998 at *7 (M.D. Fla. Sep. 13, 2011) (quoting Social Security Ruling 96–7p).

Claimant posits that the ALJ found her not credible by merely invoking the medical evidence of record.  Doc. No. 14 at 21.   The ALJ considered seven factors in determining Claimant's credibility.  *See* R. 381.  The ALJ found Claimant was not credible because she has not required hospitalization or emergency treatment, she has been described as well nourished and not in distress and there was no evidence of muscle wasting or atrophy.  R. 381.  The ALJ also found Claimant was not credible because she had reported paying bills, shopping and driving short distances.  R. 382.  The ALJ also stated that Claimant's testimony regarding her limitations on sitting, standing and walking was not supported by the medical evidence of record.

R. 382. Contrary to Claimant's argument, the ALJ articulated specific reasons for finding

Claimant not credible. Accordingly, the ALJ did not err in finding Claimant was not credible.

**VII.   CONCLUSION**

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment in favor of the Commissioner and close the

case.

**DONE and ORDERED** in Orlando, Florida on March 15, 2012.

_____

GREGORY J. KELLY

UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
3200 Corrine Drive, Suite E
Orlando, Florida 32803

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida  33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Douglas Wilson, Branch Chief
Erin Highland, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia  30303-8920

The Honorable JoAnn L. Anderson
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224